Magistrate Judge Michelle L. Peterson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>PATRICK MCDONAGH<br>MATTHEW MCDONAGH,<br><br>Defendants. | CASE NO.  MJ24-410<br><br>COMPLAINT for VIOLATION<br><br>Title 18, U.S.C.<br><br>Sections 1349 and 2 |

BEFORE, the Honorable Michelle L. Peterson, United States Magistrate Judge, U.S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

1. Beginning at a time unknown but not later than in or about September 2023 and continuing through at least June 2024, in Snohomish County, within the Western District of Washington, and elsewhere, the defendants PATRICK MCDONAGH and

Complaint - 1
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

MATTHEW MCDONAGH, together with others known and unknown, did conspire, confederate and agree, together and with each other, to commit the offense of wire fraud in violation of Title 18, United States Code, Section 1343.

2. That is, PATRICK MCDONAGH and MATTHEW MCDONAGH, together with others known and unknown, with intent to defraud, agreed to knowingly devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises. To execute and attempt to execute the scheme and artifice to defraud, PATRICK MCDONAGH and MATTHEW MCDONAGH, together with others known and unknown, knowingly transmitted, and caused to be transmitted by wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds.

3. The object of the conspiracy was to use false promises and pretenses to fraudulently obtain money and property of value from Victim 1.

*Manner and Means*

The following conduct was part of the conspiracy:

4. On or about January 11, 2024, MATTHEW MCDONAGH approached the home of Victim 1, who lives alone in Shoreline, Washington.

5. MATTHEW MCDONAGH falsely claimed that he was performing construction work in Victim 1's neighborhood and saw that Victim 1's home had a hole in the roof. MATTHEW MCDONAGH offered to inspect the roof for Victim 1.

6. MATTHEW MCDONAGH inspected the roof and returned with a shingle purporting to show damage to the roof. Victim 1's roof had been repaired several years earlier; the roof did not need urgent repair. MATTHEW MCDONAGH nevertheless told Victim 1 that MATTHEW MCDONAGH and others could repair the roof.

7. PATRICK MCDONAGH was another supposed contractor who told Victim 1 he worked with MATTHEW MCDONAGH. Victim 1 observed PATRICK MCDONAGH and MATTHEW MCDONAGH together. PATRICK MCDONAGH

Complaint - 2
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

directed Victim 1 how to transfer money from his financial accounts to cover the cost of the ostensible repairs. MATTHEW MCDONAGH collected money from Victim 1 and cashed the checks. In at least one instance, Victim 1 observed PATRICK MCDONAGH and MATTHEW MCDONAGH discussing how to convince Victim 1 to pay them more money.

8. MATTHEW MCDONAGH, PATRICK MCDONAGH, or a co-conspirator directed Victim 1 to write MATTHEW MCDONAGH a check for the work on the roof. Victim 1 wrote MATTHEW MCDONAGH a check for $15,000, which MATTHEW MCDONAGH cashed at a bank branch located in Snohomish County, within the Western District of Washington.

9. In addition to a hole in his roof, MATTHEW MCDONAGH and PATRICK MCDONAGH falsely claimed that Victim 1 had a crack in his foundation that was damaging his house and needed urgent repair. MATTHEW MCDONAGH and PATRICK MCDONAGH told Victim that they, together with others known and unknown, would use a titanium tie rod system to fix the foundation.

10. MATTHEW MCDONAGH and PATRICK MCDONAGH did not install a titanium tie rod system as promised and did not repair the foundation. Instead, MATTHEW MCDONAGH and PATRICK MCDONAGH directed others to dig a trench around Victim 1's foundation and in Victim 1's yard, which gave Victim 1 the impression that they were performing expensive work on his foundation.

11. MATTHEW MCDONAGH and PATRICK MCDONAGH demanded more and more money for the work they claimed they were performing. Over the course of the scheme, between approximately January 11, 2024 and January 24, 2024, Victim 1 wrote MATTHEW MCDONAGH checks worth $235,000. MATTHEW MCDONAGH cashed each check.

12. In at least one instance, PATRICK MCDONAGH and MATTHEW MCDONAGH directed Victim 1 to wire funds to pay for "building materials."

Complaint - 3
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.     On January 25, 2024, defendants and others known and unknown caused Victim 1 to wire $200,000 from a bank account in his name to a third-party's bank account. Victim 1 initiated the wire from within the Western District of Washington, and the wire terminated outside of Washington. A note accompanying the wire transmission stated that the purpose of the payment was for "building materials."

14.     Contrary to PATRICK MCDONAGH's and MATTHEW MCDONAGH's representations, the $200,000 wire transfer was not for building materials. PATRICK MCDONAGH and MATTHEW MCDONAGH did not use $200,000-worth of building materials on Victim 1's home.

15.     In total, Victim 1 paid PATRICK MCDONAGH and MATTHEW MCDONAGH at least approximately $435,000 for home repairs. The value of the work done on Victim 1's home was a small fraction of the $435,000 PATRICK MCDONAGH and MATTHEW MCDONAGH charged Victim 1.

16.     PATRICK MCDONAGH and MATTHEW MCDONAGH, and others known and unknown, lied about the status of Victim 1's home and the repairs it needed to trick Victim 1 into paying them $435,000 for contractor work they did not perform.

All in violation of Title 18, United States Code Sections 1349 and 2.

Complaint - 4
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

And the complainant states that this Complaint is based on the following information:

I, ETHAN VIA, being first duly sworn on oath, depose and say:

1. I am employed as a Special Agent with the Federal Bureau of Investigation and have been employed with the FBI since August 2003. I am currently assigned to the Seattle Field Division where I am a member of the Complex Financial Crime squad. I have received basic federal law enforcement training, including the training at the FBI Academy in Quantico, Virginia, as well as other specialized law enforcement training. In the course of my official duties as a Special Agent, I have investigated a broad range of violations of federal statutes governing various types of complex financial crimes including aggravated identity theft, bankruptcy fraud, wire fraud, mail fraud, bank fraud, securities fraud, money laundering, and conspiracy.

2. Before my career as an FBI Special Agent, I was employed as a Certified Public Accountant for approximately three years and, as part of that employment, I examined financial information of clients to determine their accuracy and reliability.

3. I am familiar with and have participated in the normal methods of investigation, including but not limited to conducting interviews, physical surveillance, reviewing financial statements, drafting and executing search and arrest warrants, and conducting consensually monitored audio recordings.

4. The following information is based upon my review of records and documents obtained during the course of this investigation; reports and other investigative materials conveyed by state and local law enforcement; information provided by federal law enforcement agencies, including but not limited to Customs and Border Protection and Homeland Security Investigations; information provided by victims and witnesses; and my experience and background as an FBI Special Agent.

5. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Complaint, it does not set forth each and every fact that I

Complaint - 5
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or others have learned during the course of the investigation. I have set forth only those facts that I believe are necessary to establish probable cause that PATRICK MCDONAGH and MATTHEW MCDONAGH, the defendants, violated 18 U.S.C. §§ 1349 and 2.

## FACTS ESTABLISHING PROBABLE CAUSE

***A.    The McDonaghs Approach Victim 1 and Lie About his Roof.***

6. On or about January 11, 2024, a man came to Victim 1's back door and stated he was working in the neighborhood and saw that Victim 1's home had a hole in the roof. Victim 1 identified the contractor as defendant MATTHEW MCDONAGH.

7. MATTHEW MCDONAGH inspected the roof and returned with a shingle purporting to show damage to the roof. Victim 1's family member informed me that Victim 1's roof had been repaired several years earlier; the roof did not need urgent repair. MATTHEW MCDONAGH nevertheless told Victim 1 that MATTHEW MCDONAGH and others could repair the roof.

8. MATTHEW MCDONAGH worked with a second person claiming to be a contractor. Victim 1 identified this second person as defendant PATRICK MCDONAGH. Victim 1 believed the two men are brothers. MATTHEW MCDONAGH and PATRICK MCDONAGH worked together to communicate with Victim 1: MATTHEW MCDONAGH initially approached Victim 1 about doing repair work on Victim 1's roof. PATRICK MCDONAGH directed Victim 1 how to move money through his financial accounts to cover the cost of the repairs.

9. Victim 1 informed law enforcement that MATTHEW MCDONAGH and PATRICK MCDONAGH agreed to clean the moss off Victim 1's roof and repair the supposed hole. Victim 1 agreed to hire them for the work. At the end of the day, Victim 1 wrote the McDonaghs a check for $15,000. The next day, Victim 1 wrote the McDonaghs two additional checks, each for $20,000. On January 13, 2024, Victim 1 wrote another check for $26,000.

Complaint - 6
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10. MATTHEW MCDONAGH and PATRICK MCDONAGH did not provide Victim 1 any paperwork, including a contractor invoice, documenting the work they claim they did on Victim 1's roof.

11. Later inspection revealed that, contrary to their claims, MATTHEW MCDONAGH and PATRICK MCDONAGH did not repair Victim 1's roof. The inspection found no signs of any repairs that were done to Victim 1's roofing material. There were no new roofing shingles visible, no new roof cement visible, and no new flashing material visible.

### B. The McDonaghs Claim Victim 1's Foundation Is Cracked.

12. After MATTHEW MCDONAGH and PATRICK MCDONAGH and others 'completed' the work on Victim 1's roof, MATTHEW MCDONAGH and PATRICK MCDONAGH told Victim 1 they observed there was a crack in the home's foundation and that the wall was bulging. Later inspection revealed that there was no crack in the foundation. Victim 1 nevertheless agreed to have the supposed crack repaired.

13. MATTHEW MCDONAGH and PATRICK MCDONAGH told Victim 1 that the foundation required an expensive repair. Before Victim 1 agreed to the work, MATTHEW MCDONAGH and PATRICK MCDONAGH and others began digging a trench next to Victim 1's house and in Victim 1's yard. They told Victim 1 that the purpose of the trench was to fix the foundation.

14. Later inspection revealed that MATTHEW MCDONAGH and PATRICK MCDONAGH did not repair Victim 1's foundation as promised. MATTHEW MCDONAGH and PATRICK MCDONAGH did not install a titanium tie rod system, as they told Victim 1 they would. MATTHEW MCDONAGH and PATRICK MCDONAGH and others dug a trench, poured concrete in it, and added a corrugated pipe, but none of this work would have fixed a cracked foundation.

Complaint - 7
United States v. Patrick McDonagh, et al. / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. As MATTHEW MCDONAGH, PATRICK MCDONAGH and others worked, MATTHEW MCDONAGH and PATRICK MCDONAGH continued to demand Victim 1 pay every day.

16. Victim 1 said that he asked several times for an invoice or some kind of proof of the cost of their work but they never provided one. Victim 1 noted that he felt something was off, but that he felt he was 'too far in' to back out. Victim 1 agreed to some of the work that MATTHEW MCDONAGH and PATRICK MCDONAGH did, but he informed law enforcement that he did not understand why the work was so expensive. Victim 1 said that whenever he asked them about the cost, MATTHEW MCDONAGH and PATRICK MCDONAGH would feign offense and claim that they were honest.

17. MATTHEW MCDONAGH and PATRICK MCDONAGH stated that they would be willing to fix some holes in the siding of the house, in addition to the work on the foundation and the roof. Victim 1 continued to pay during this time. Victim 1's bank called Victim 1 several times and asked if the transactions were legitimate and he told them that they were.

18. Finally, MATTHEW MCDONAGH and PATRICK MCDONAGH and others poured a small concrete pad for the home's back door. Victim 1 asked the contractors to repair a cement walkway and add some cement to Victim 1's driveway. After he paid for this, the McDonaghs asked him to pay 'for taxes' and demanded an extra $20,000. Victim 1 became skeptical of MATTHEW MCDONAGH and PATRICK MCDONAGH at this point.

19. MATTHEW MCDONAGH and PATRICK MCDONAGH asked Victim 1 to show them his bank accounts, and he opened them in front of them to show he had only $20,000 left in them. He said he would not pay the last $20,000 because he needed money to live on, and because he had already paid them for everything.

Complaint - 8
United States v. Patrick McDonagh, et al. / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

20. MATTHEW MCDONAGH and PATRICK MCDONAGH never provided Victim 1 an invoice or contract for the work they claimed they performed, even though Victim 1 requested this information.

### C. The McDonaghs Demand $435,000 for Little Work Done.

21. In total, Victim 1 paid MATTHEW MCDONAGH and PATRICK MCDONAGH approximately $435,000 in checks and wire transfers. Later inspection revealed that the materials used for the work done by the McDonaghs consisted of approximately $200 in material used to fill holes in the siding of Victim 1's house, concrete for driveway and walkway additions in the front of Victim 1's house, concrete at the bottom of a trench in the back of Victim 1's house, and a black corrugated plastic pipe. The inspector informed me that the total cost of work done on Victim 1's home was significantly less than the $435,000 the McDonaghs' charged Victim 1.

22. When Victim 1 told MATTHEW MCDONAGH and PATRICK MCDONAGH that Victim 1 could not afford the payments, MATTHEW MCDONAGH and PATRICK MCDONAGH directed Victim 1 how to move money from financial accounts to cover the costs of the purported construction work. PATRICK MCDONAGH provided Victim 1 contact information for Victim 1's financial institutions so Victim 1 could transfer money and pay MATTHEW MCDONAGH and PATRICK MCDONAGH. Victim 1 told law enforcement that MATTHEW MCDONAGH and PATRICK MCDONAGH took approximately half of Victim 1's 401K retirement savings.

23. Victim 1 wrote at least approximately twelve checks to MATTHEW MCDONAGH for work ostensibly performed on Victim 1's home. The checks ranged in amount from $14,000 to $26,000 and totaled at least approximately $235,000. The memos for the checks included "foundation repair" and "home repair."

Complaint - 9
United States v. Patrick McDonagh, et al. / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

24. MATTHEW MCDONAGH cashed each check at a financial institution located within the Western District of Washington. The bank captured surveillance of MATTHEW MCDONAGH cashing many of Victim 1's checks; one example—captured on January 11, 2024—is shown below:



25. PATRICK MCDONAGH, MATTHEW MCDONAGH, and others known and unknown also told Victim 1 to wire money to pay for building materials. On January 25, 2024, Victim 1 wired $200,000 from a financial account in his name to a third party's bank account in New York. The purpose of the wire transmission was "building materials."

26. The owner of account that received the wire later contacted law enforcement and stated that the purpose of the wire was for repayment of a past debt for building materials.

### D. *The McDonaghs Agreed to Defraud Victim 1.*

27. Victim 1 informed law enforcement that MATTHEW MCDONAGH and PATRICK MCDONAGH acted together on the supposed contractor work and in making decisions about payments.

28. Although MATTHEW MCDONAGH initially approached Victim 1, Victim 1 informed law enforcement that MATTHEW MCDONAGH and PATRICK MCDONAGH typically arrived at Victim 1's residence together. PATRICK

Complaint - 10
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

MCDONAGH directed MATTHEW MCDONAGH and others how to complete the work they claimed they were doing.

29. PATRICK MCDONAGH typically talked to Victim 1 about payments. But MATTHEW MCDONAGH and PATRICK MCDONAGH directed Victim 1 to write checks to MATTHEW MCDONAGH, which Victim 1 did. MATTHEW MCDONAGH cashed the checks.

30. In at least one instance, Victim 1 observed MATTHEW MCDONAGH and PATRICK MCDONAGH step away from a conversation with Victim 1 to privately discuss MATTHEW MCDONAGH's and PATRICK MCDONAGH's demand that Victim 1 pay taxes on the work they claimed to perform.

### E. *The McDonaghs Targeted Victims in Other Districts.*

31. FBI and other law enforcement have connected MATTHEW MCDONAGH and PATRICK MCDONAGH with at least three additional victims of contractor fraud located outside of the Western District of Washington. In total, these three victims lost at least approximately $50,000 to the scheme.

32. As one example, three men demanded $29,000 for home repair work from Victim 2 in Tualatin, Oregon. The contractors falsely told Victim 2 they were associated with a local construction company to induce Victim 2 to hire them for foundation work. Later inspection revealed that the whole repair job should have cost under $2,000, but Victim 2 ended up paying $29,000. Victim 2 identified PATRICK MCDONAGH as one of the individuals who defrauded her.

33. As another example, MATTHEW MCDONAGH and PATRICK MCDONAGH approached the Spokane residence of Victim 3 and claimed Victim 3's roof needed repairs. One of them went onto Victim 3's roof and inspected the chimney. They then showed Victim 3 a picture of a roof with a hole in it. Believing that this hole was on his roof, Victim 3 agreed to let them work on it.

Complaint - 11
*United States v. Patrick McDonagh, et al.* / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34. After only about an hour, MATTHEW MCDONAGH and PATRICK MCDONAGH told Victim 3 that they were finished and showed him a video of his roof and chimney. Victim 3 realized that the contractors did not perform any of the agreed-upon work and that the pictures the contractors previously showed him did not depict his roof and likely were fake. The contractors showed Victim 3 a fake invoice for $3,000. DM paid the invoice.

## CONCLUSION

35. Based on the above facts, I respectfully submit that there is probable cause to believe that MATTHEW MCDONAGH and PATRICK MCDONAGH committed the offense of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1349 and 2.

ETHAN VIA, Complainant
Special Agent, FBI

The above-named agent provided a sworn statement attesting to the truth of the foregoing Complaint and Affidavit. Based on the Complaint and Affidavit, the Court hereby finds there is probable cause to believe the Defendants committed the offense set forth in the Complaint.

Dated this 9th day of July, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

Complaint - 12
United States v. Patrick McDonagh, et al. / MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970