FILED / LODGED / ENTERED / RECEIVED
SEP 05 2024
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
BY _____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. 24CR-120JHC |
|---|---|
| Plaintiff, | **PLEA AGREEMENT** |
| v. | |
| MATTHEW MCDONAGH, | |
| Defendant. | |

The United States, through United States Attorney Tessa M. Gorman and Assistant United States Attorney Lauren Watts Staniar of the Western District of Washington and MATTHEW MCDONAGH and MATTHEW MCDONAGH's attorney Ralph Hurvitz enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charge contained in the Indictment.

   a. Conspiracy to Commit Wire Fraud, as charged in Count 1, in violation of Title 18, United States Code, Section 1349.

Plea Agreement - 1
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offense.** The elements of the offense to which Defendant is pleading guilty are as follows:

a. The elements of Conspiracy to Commit Wire Fraud, as charged in Count 1, are as follows:

*First*, two or more persons agreed to engage in a course of conduct that included each of the elements of the crime of wire fraud, as set forth below;

*Second*, the defendant knew the unlawful purpose of the agreement; and

*Third*, the defendant joined the agreement with the intent to further the unlawful purpose.

The elements of Wire Fraud are as follow:

*First*, the defendant knowingly participated in, or devised, a scheme or plan for obtaining money or property through false or fraudulent pretenses, representations or promises;

*Second*, the promises, statements, or representations were material, that is, they had a natural tendency to influence a person to part with money or property;

*Third*, the defendant acted with the intent to defraud; and

*Fourth*, the defendant used, or caused to be used, the wires in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a. Defendant understands that the statutory penalties applicable to the offense of Conspiracy to Commit Wire Fraud, as charged in Count 1, are as

Plea Agreement - 2
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

follows: A maximum term of imprisonment of up to 20 years, a fine of up to $250,000 or twice the gross gain or loss from the offense, a period of supervision following release from prison of up to five years, and a mandatory special assessment of $100. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

4. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is

Plea Agreement - 3
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of Defendant's peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

    f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

    g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

    h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the

Plea Agreement - 4
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

    b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.    **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.    **Statement of Facts.** Defendant admits Defendant is guilty of the charged offense. The parties agree on the following facts:

Plea Agreement - 5
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. **Overview.** MATTHEW MCDONAGH and PATRICK MCDONAGH are Irish nationals who travelled around the United States claiming they were contractors. They approached victims and falsely claimed the victims' homes needed urgent repairs. They used false representations and promises to persuade victims to pay them exorbitant amounts of money for repairs that were not necessary and that the defendants did not finish or performed poorly.

b. MATTHEW MCDONAGH and PATRICK MCDONAGH targeted at least one victim within the Western District of Washington, Victim 1. Victim 1 lives in King County, Washington. MATTHEW MCDONAGH and PATRICK MCDONAGH falsely told Victim 1 he had a crack in his foundation. MATTHEW MCDONAGH and PATRICK MCDONAGH requested Victim 1 pay hundreds of thousands of dollars over the course of several weeks for roofing, foundation, and cement work.

c. MATTHEW MCDONAGH and PATRICK MCDONAGH did not fix a crack in Victim 1's foundation, as PATRICK MCDONAGH and MATTHEW they claimed they would. Based on the defendants' misrepresentations, Victim 1 nevertheless paid them a total of $435,000, including one $200,000 wire transfer for "building materials."

d. MATTHEW MCDONAGH targeted other victims, including a victim in Illinois with the contractor scheme. As with Victim 1, MATTHEW MCDONAGH charged this victim money for construction work he did not perform or performed poorly.

e. The total loss attributable to MATTHEW MCDONAGH's conduct exceeds $250,000 but is less than $550,000.

f. **MATTHEW MCDONAGH targeted Victim 1.** On or about January 11, 2024, MATTHEW MCDONAGH approached the home of Victim 1, an elderly person who lives in Shoreline, Washington.

Plea Agreement - 6
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g. MATTHEW MCDONAGH falsely claimed that he was performing construction work in Victim 1's neighborhood, and further stated that the roof required power washing. MATTHEW MCDONAGH told Victim 1 that he and others could work on other parts of the home that MATTHEW MCDONAGH said required repairs.

h. PATRICK MCDONAGH was another supposed contractor who told VICTIM 1 he worked with MATTHEW MCDONAGH. Victim 1 observed PATRICK MCDONAGH and MATTHEW MCDONAGH together. PATRICK MCDONAGH and MATTHEW MCDONAGH agreed to commit the conduct described herein, knowing of the unlawful purpose of the agreement.

i. MATTHEW MCDONAGH and PATRICK MCDONAGH falsely claimed that Victim 1 had a crack in his foundation that was damaging his house and needed urgent repair. MATTHEW MCDONAGH and PATRICK MCDONAGH told Victim 1 that they would use a titanium tie rod system to fix the foundation.

j. MATTHEW MCDONAGH and PATRICK MCDONAGH did not install a titanium tie rod system as promised and did not repair the foundation. Instead, MATTHEW MCDONAGH and PATRICK MCDONAGH directed others to dig a trench around Victim 1's foundation and in Victim 1's yard, which gave Victim 1 the impression that they were performing expensive work on his foundation.

k. PATRICK MCDONAGH directed Victim 1 how to transfer money from his financial accounts to cover the cost of the supposed repairs. PATRICK MCDONAGH provided Victim 1 information on how to make those transfers. When Victim 1 informed PATRICK MCDONAGH that he did not have enough money to cover the cost of the supposed repairs, PATRICK MCDONAGH suggested Victim 1 transfer money from his retirement account or liquidate other assets.

l. MATTHEW MCDONAGH, PATRICK MCDONAGH, or a co-conspirator directed Victim 1 to write MATTHEW MCDONAGH a check for the work on the

Plea Agreement - 7
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

roof. Victim 1 wrote MATTHEW MCDONAGH a check for $15,000, which MATTHEW MCDONAGH promptly cashed.

m.

n. MATTHEW MCDONAGH and PATRICK MCDONAGH demanded more and more money for the work they claimed they were performing. Over the course of the scheme, between approximately January 11, 2024 and January 24, 2024, defendants persuaded Victim 1 to write MATTHEW MCDONAGH approximately twelve checks worth $235,000. MATTHEW MCDONAGH cashed each check at a bank branch located in Snohomish County, within the Western District of Washington.

o. When Victim 1 protested that he did not have enough money to cover the supposed repairs, MATTHEW MCDONAGH and PATRICK MCDONAGH directed Victim 1 to move money out of his retirement account. Victim 1 transferred at least approximately $357,000 out of his retirement account into his checking account to cover the supposed cost of the home repairs. Victim 1 paid this money to PATRICK MCDONAGH and MATTHEW MCDONAGH as part of the fraud. Victim 1 suffered a substantial loss of his retirement savings.

p. In at least one instance, PATRICK MCDONAGH and MATTHEW MCDONAGH or a co-conspirator directed Victim 1 to wire funds to pay for "building materials."

q. On January 25, 2024, defendants and others known and unknown caused Victim 1 to wire $200,000 from a bank account in his name to a third-party's bank account. Victim 1 initiated the wire from King County, Washington, within the Western District of Washington, and the wire terminated outside of Washington. A note accompanying the wire transmission stated that the purpose of the payment was for "building materials."

Plea Agreement - 8
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

r. Contrary to PATRICK MCDONAGH's and MATTHEW MCDONAGH's representations, they did not use $200,000-worth of building materials on Victim 1's home.

s. In total, based on their misrepresentations and false statements, Victim 1 paid MATTHEW MCDONAGH and PATRICK MCDONAGH at least approximately $435,000 believing that he was paying for home repairs. The actual value of the work done on Victim 1's home was a small fraction of the $435,000 the McDonaghs charged Victim 1.

t. **Victims in other districts.** PATRICK MCDONAGH and MATTHEW MCDONAGH defrauded other victims in other districts using the same scheme they used to defraud Victim 1. For example, MATTHEW MCDONAGH and others known and unknown, falsely claimed to Illinois resident Victim 5 that they could re-pave Victim 5's driveway and build a retaining wall, and that the work would cost approximately $99,000. Victim 5 paid MATTHEW MCDONAGH and others known and unknown at least approximately $75,000. MATTHEW MCDONAGH and others began the work, but it was poorly done and damaged Victim 5's home. The value of the work done was significantly less than what Victim 5 paid.

u. **The scheme involved wire communications.** MATTHEW MCDONAGH's and PATRICK MCDONAGH's conspiracy involved the use of interstate wire transmissions. As noted above, PATRICK MCDONAGH, MATTHEW MCDONAGH, or a co-conspirator instructed Victim 1 to wire, to a location outside of Washington, $200,000 in funds, purportedly to cover the cost of "building materials."

v. MATTHEW MCDONAGH and PATRICK MCDONAGH also directed Victim 1 to pay them in checks, which MATTHEW MCDONAGH cashed at a bank located in Snohomish County, within the Western District of Washington. Each check cash transaction involved a reasonably foreseeable interstate wire transmission

Plea Agreement - 9
*United States v. McDonagh*, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from the Western District of Washington to a server located outside of Washington state.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

   a. A base offense level of 7 pursuant to USSG § 2B1.1(a)(1);

   b. An increase of 12 points because the fraud loss was between $250,000 and $550,000 pursuant to USSG § 2B1.1(b)(1)(H);

   c. An increase of 2 levels because the offense resulted in substantial financial hardship to one or more victims pursuant to USSG § 2B1.1(b)(2)(A).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Plea Agreement - 10
*United States v. McDonagh*, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11. **Sentencing Recommendations.** The government agrees to recommend a custodial sentence of no more than 26 months. Defendant understands that the parties' recommendations will not be binding on the Court, and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12. **Interdependence of Plea Agreements.** Defendant acknowledges that the United States has conditioned its willingness to enter into this Plea Agreement on the Court's acceptance of the guilty plea and Plea Agreement by PATRICK MCDONAGH, in CR24-120JHC. As a result, if either Defendant or PATRICK MCDONAGH fails to enter into, and plead guilty pursuant to the terms of, the respective Plea Agreements, or if either Defendant or PATRICK MCDONAGH later seeks to withdraw the resulting guilty pleas, the United States may, at its election, withdraw from either or both Plea Agreements. If the United States chooses to withdraw from this Plea Agreement under these circumstances, Defendant understands that the United States will seek an Indictment against both parties for all crimes for which the United States has sufficient evidence.

13. **Restitution.** Defendant shall make restitution equal to the total amount that the government is able to prove at the time of sentencing that victims lost to the contractor fraud scheme described herein. That includes at minimum $235,000 to Victim 1 and a minimum of $75,000 to Victim 5, with credit for any amounts already paid.

   a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

Plea Agreement - 11
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy Defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that Defendant is unable to make immediate restitution.

      b.     Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview; and (7) notifying the United States Attorney's Office before transferring any interest in property

Plea Agreement - 12
*United States v. McDonagh*, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

      c.      The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a). In addition, in any event, the government will consider Defendant's cooperation regarding restitution in making its sentencing recommendation.

14. **Forfeiture of Assets.** Defendant understands that the forfeiture of assets is part of the sentence imposed in this case. Defendant agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property, real or personal, that constitutes or is derived from proceeds traceable to the offense of Conspiracy to Commit Wire Fraud, as charged in Count 1 of the Indictment. All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and includes but is not limited to a judgement for a sum of money (also known as a forfeiture money judgment) in the amount of the proceeds Defendant obtained as a result of the offense, as agreed by the parties or established by the government at the time of sentencing.

The United States reserves its right to proceed against any remaining assets not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if said assets constitute or are derived from proceeds of the Conspiracy to Commit Wire Fraud described above.

15. **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

16. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to

Plea Agreement - 13
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

17. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and/or (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

Plea Agreement - 14
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to file additional charges against Defendant and/or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

18. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable).

Defendant also agrees that, by entering the guilty plea required by this Plea Agreement, Defendant waives any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation or a claim of prosecutorial misconduct based on facts unknown or not reasonably discoverable prior to entry of the judgment of conviction. Defendant acknowledges that certain claims, including certain claims for prosecutorial misconduct, will be barred by operation of law by virtue of their guilty plea, independently from this Plea Agreement. This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of

Plea Agreement - 15
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to claims not subject to the waiver, above) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

19. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

20. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

Plea Agreement - 16
*United States v. McDonagh*, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21. **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 5th day of September, 2024.

_____
MATTHEW MCDONAGH
Defendant

_____
RALPH HURVITZ
Attorney for Defendant

_____
SETH WILKINSON
Assistant United States Attorney

_____
LAUREN STANIAR
Assistant United States Attorney

Plea Agreement - 17
United States v. McDonagh, CR24-120JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970